Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

W. Daniel "Dee" Miles, III (*pro hac vice anticipated*)
Rachel N. Boyd (*pro hac vice anticipated*)
Paul W. Evans (*pro hac vice anticipated*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Rachel.Boyd@Beasleyallen.com
Paul.Evans@Beasleyallen.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNEEL RAJPAL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No.: 4:20-cv-01757<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Suneel Rajpal ("Mr. Rajpal" or "Plaintiff"), individually and on behalf of two subclasses of all those similarly situated, brings this action against Jackson National Life Insurance Company ("Jackson National" or "Defendant") and alleges based upon investigation, experience, and information and belief as follows:

## <u>INTRODUCTION</u>

1.      This is a class action for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion to recover amounts that Defendant charged Plaintiff and the putative Classes in excess of the amounts authorized by the express terms of their life insurance policies.

2.      Defendant is a for-profit life insurer that has entered into universal life policies with Plaintiff and the putative Classes.  The written provisions of Plaintiff's Policy support Plaintiff's breach of contract claims and are materially the same as those of other policies held by the members of the putative Classes, and not subject to individual negotiation.

3.      The terms of Plaintiff's universal life insurance policy provide for an "Accumulation Value" consisting of monies paid by Plaintiff in premiums and held in trust by Defendant for Plaintiff.  Under the terms of the policy, Defendant is contractually bound to deduct from the Accumulation Value only those charges that are explicitly identified and authorized.

4.      Yet the Plaintiff, along with numerous other Jackson National policyholders, has been forced to pay inflated monthly charges for cost of insurance ("COI") that are not allowed by the plain language of their insurance contracts.  The subject Jackson National policies specify that monthly COI rates will be determined based on Jackson National's "expectations of future mortality experience"—and nothing else.  Defendant was contractually required to review and determine the mortality-only based COI rates "from time to time."

5.      These policy provisions created a mutual and reciprocal commitment between Jackson National and all putative Class Members: policyholders agree to let Jackson National increase COI rates if expectations of future mortality experience get worse, and in return, Jackson National agrees to **decrease** COI rates on its customers when there is an improvement in mortality experience.  Jackson National, however, has failed to live up to its end of the bargain.

6.      Nationwide mortality rates have **declined** significantly over the past several decades.  Defendant's expectations of future mortality experience have likewise substantially changed in its favor.  As a result, insureds are living longer than Jackson National originally anticipated when the policies at issue were first priced.  Defendant admits as much as on its website: "The average American is living longer than ever before."[1]

7.      Defendant continuously breaches the policy by failing to decrease the COI rates, and by charging excess expense and administration fees on Plaintiff's and Class Members' Policies, all the while knowing that its actions are not supported by the express terms of the Policies.

---

[1] JACKSON, https://www.jackson.com/index.xhtml (last visited Jan. 31, 2020).

8.     In the face of the substantially improved mortality experience that has benefited Jackson National, it is apparent that Jackson National has wrongly construed its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to **increase** COI rates if there were to be an unexpected pandemic that made mortality experience worse than anticipated (as it already did in the early 1990s), but not requiring it to **decrease** COI rates in the face of years and years of improved mortality experience—an improvement that has, in fact, already occurred.  Jackson National has also wrongly based COI rates on other factors besides just its expectations of future mortality experience.  This position obviously has no merit and breaches the terms of the insurance policies.

9.     As a result of Defendant's conduct, Plaintiff and the Classes have sustained damages which are continuing in nature.  Plaintiff seeks to recover compensatory and punitive damages, as well as declaratory and injunctive relief, on behalf of himself and the Classes.

**PARTIES**

10.     Plaintiff Suneel Rajpal is an adult resident of San Jose, California.  Plaintiff Rajpal owns Jackson National Life Insurance Company universal life insurance policy number 04101380, which was purchased in Fremont, California in Alameda County, when Plaintiff was a resident there.  Policy 04101380 is a "Flexible Premium Adjustable Life V1-250," policy, with an effective date of March 3, 1990 and an initial specified benefit amount of $500,000.  This policy insures the life of Mr. Rajpal and remains in force with Jackson National.

11.     Defendant Jackson National Life Insurance Company is a corporation organized and existing under the laws of Michigan, and according to its annual statements, has its statutory headquarters at 1 Corporate Way, Lansing, Michigan 48951.  Jackson National is an indirect wholly owned subsidiary of United Kingdom's Prudential plc.  The term "Jackson National" or "Defendant" includes Jackson National Life Insurance Company and all its predecessors.

**JURISDICTION AND VENUE**

12.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million,

1   exclusive of interest and costs.

2       13.    This Court has personal jurisdiction over Jackson National because it is the venue where

3   Plaintiff Rajpal resides and where the transaction occurred that gives rise to this lawsuit.  Further Jackson

4   National has systematic and continuous contacts within the state this Court resides by and through the

5   premiums it receives from citizens of this state, the policies issued to citizens in this state, the presence of

6   a registered agent, and its filings with the relevant state regulatory bodies.

7       14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(2) and (d) because Jackson

8   National is subject to this Court's personal jurisdiction and has sufficient contacts establishing such.

9                                    **INTRADISTRICT ASSIGNMENT**

10      15.    Pursuant to Civil L.R. 3-2(c), the San Francisco Division or Oakland Division is the proper

11  intradistrict assignment because a substantial part of the events or omissions which give rise to this claim

12  occurred in Alameda County.  This case does not fall into any exception to the division-specific venue

13  rule exception under Civil L.R. 3-2(c).

14                                           **FACTS**

15  **I.    General Background Allegations**

16      16.    Plaintiff is the owner of Jackson National policy number 04101380 ("the Policy," together

17  with those of the proposed classes, the "Policies").

18      17.    Plaintiff purchased his Jackson National Policy in 1990 while residing in Fremont,

19  California from Maccabees Mutual Life Insurance Company ("Maccabees Mutual"), Defendant's

20  predecessor in interest. The copies of Plaintiff's Policy (the "Rajpal Policy") in Plaintiff's possession are

21  attached hereto as Exhibits 1 and 2.

22      18.    After Plaintiff purchased the Policy, Maccabees Mutual merged with the Royal Insurance

23  Group and operated under the name Royal Maccabees Life Insurance Company ("Royal Maccabees").  In

24  1999, Royal Maccabees was then acquired by Swiss Reinsurance Company Ltd. ("Swiss Re") and merged

25  into Reassure America Life Insurance Company ("Reassure America"), a Swiss Re subsidiary.

26      19.    In December of 2012, Reassure America was acquired by and merged into Defendant

27  Jackson National.

28      20.    Thus, due to a series of corporate acquisitions and mergers, Defendant is the effective and

1   liable insurer of the Policy.  All recent correspondence regarding the Policy are sent on Jackson National

2   letterhead.

3       21.    Defendant administers and has administered all aspects of the Policies, including the

4   collection of premiums and the setting, assessing, and deduction of policy charges.

5   **II.**    **The Policies**

6       22.    The policies at issue are individual universal life ("UL") policies issued by Jackson

7   National that have the following language about how the rate used to calculate the COI charge will be

8   based and later reviewed:  "The monthly Cost of Insurance Rate is based on the sex, attained age, and

9   rating class of the person insured.  Monthly Cost of Insurance Rates will be determined by the Company

10  from time to time based on its expectations as to future mortality experience."  These policies include, but

11  are not limited to, all policies issued on the policy form of the Rajpal Policy (i.e. Form FPAL-6), and all

12  policies in the same product line (collectively, the "Policies").

13      23.    The relevant terms of all Policies are substantially identical to those set forth in the Rajpal

14  Policy.  The policies at issue are all form policies, and insureds are not permitted to negotiate different

15  terms.  The COI Class Policies are all contracts of adhesion.

16      24.    To maintain life insurance coverage, a purchaser of a Jackson National universal life policy

17  makes an initial premium payment, and continues to make premium payments sufficient to cover each

18  month's expense charge.

19      25.    In addition to a death benefit, the Policies provide policyholders an investment, savings, or

20  interest-bearing component that accumulates value over time (the "Accumulation Value").  The COI

21  charge is deducted outright from the policy owner's Accumulation Value, so the policyholder forfeits the

22  COI charge entirely to Defendant.  The COI charge represents Jackson National's risk—the chance that

23  Jackson National will have to pay the death benefit (or the policy's "face value") to the policy's owner

24  when the insured dies.  The payment of COI charges to cover Jackson National's risk is the policy's

25  insurance component, and Defendant contractually agreed to base its COI rate **only** on a mortality factor

26  (see below).  The COI charge is deducted—and "determined"—on a monthly basis, and it is calculated by

27  multiplying the applicable "COI rate" by the net amount at risk that Jackson National stands to pay out

28  when the insured dies (i.e., the difference between the face value and the account value).

26.     Specifically, the Policy defines "Accumulation Value" as "The amount of money that is credited with interest to the Policy on a monthly basis." Ex. 1 at 5; Ex. 2 at 3.  Under the express terms of the Policies, the Accumulation Value in any given month a policy is in force is calculated by: (a) adding one month's interest and a percentage of each monthly premium received to the prior month's Accumulation Value and (b) subtracting from that amount the amounts of any charges assessed and deducted by Defendant:

> The Accumulation Value on the Date of Issue shall be at least 93½ percent of premiums paid on or before the Date of Issue, less the Monthly Expense Charge of the first month. On each Monthly Deduction Day the Accumulation Value shall be calculated as (a), plus (b) plus (c), minus the sum of (d) plus (e) where:
>   (a) is the Accumulation Value on the preceding Monthly Deduction Day;
>   (b) is the one month's interest on (a);
>   (c) is 93½ percent or more of all premiums received since the preceding Monthly Deduction Day;
>   (d) is the amount of any Partial Surrender, Partial Surrender Charge, Withdrawal and Withdrawal fee since the preceding Monthly Deduction Day;
>   (e) is the Monthly Expense Charge for the month following the Monthly Deduction Day.
>
> On any day other than a Monthly Deduction Day, the Accumulation Value shall be calculated as (f) plus (g) minus (h), where:
>   (f) is the Accumulation Value as of the preceding Monthly Deduction Day;
>   (g) is 93½ percent or more of all premiums received since the preceding Monthly Deduction Day;
>   (h) is the among of any Partial Surrender, Partial Surrender Charge, Withdrawal or Withdrawal fee since the preceding Monthly Deduction Day.

Ex. 2 at 9.

27.     The Policies specifically guarantee a credited interest rate.  Plaintiff's Policy, for instance, guarantees "a minimum of .32737 percent per month, compounded monthly, which is equal to 4 percent per year compounded annually."  While Defendant may credit interest in excess of this guaranteed rate, it is not permitted to credit interest at any amount less than 4 percent annually.  Ex. 2 at 9.

28.     The Policy also expressly defines each of the specific charges that Defendant may assess and deduct from the Policies' Accumulation Value.  Defendant may assess and deduct only those charges allowed by the Policies, in the manner provided in the Policies.

29.     The amount deducted from the Policies each month for coverage and additional benefits is defined as the "Monthly Expense Charge."  The Policy states that the Monthly Expense Charge is

calculated as the "Cost of Insurance" plus the cost of additional benefits provided by a rider, plus the "Administrative Charge":

> The Monthly Expense Charge shall be calculated as (i) plus (j), where:
> (i) is the Cost of Insurance (as described below) plus the cost of additional benefits provided by rider;
> (j) is the Administrative Charge.

Ex. 2 at 9.

30.     The Policy provides that "[t]he Administrative Charge shall not exceed, but may be less than, the Maximum Administrative Charge shown on the Schedule Page." Ex. 2 at 9. Mr. Rajpal's Maximum Administrative Charge is $5.00, according to his Policy. Ex. 1 at 3; Ex. 2 at 1.

31.     Defendant, however, charges expenses in excess of the Maximum Administrative Charge, without explanation. *See* Annual Statements attached hereto as Exhibit 3.

32.     As for the COI, no policyholder can independently calculate the monthly deduction on his or her policy—meaning they cannot verify that the COI Defendant charges is accurate—because Defendant does not disclose the specific equation it uses. In fact, the only insight a policyholder has into the manner in which COI is determined is the following tortuous policy language:

> The Cost of Insurance is determined on a monthly basis. The Cost of Insurance is determined separately for the Initial Specified Benefit Amount and for each increase in Specified Benefit Amount.
>
> The Cost of Insurance is calculated as (a), multiplied by the result of (b) minus (c), where:
> (a) is the Cost of Insurance Rate as described in the Cost of Insurance Rates section;
> (b) is the Insurance Proceeds at the beginning of the policy month divided by 1.0032737;
> (c) is the Accumulation Value at the beginning of the policy month.
>
> If the Accumulation Value is included in the Specified Benefit Amount and there have been increases in the Insurance Proceeds, then the Accumulation Value shall be first considered a part of the Initial Specified Benefit Amount. If the Accumulation Value exceeds the Initial Specified Benefit Amount, it shall then be considered a part of additional Specified Benefit Amounts resulting from increases in the order of the increases.

Ex. 2 at 9.

33.     Even the most capable policyholder, reading his policy with excruciating care, cannot determine what his COI charges should be at any given period. Instead, he must fully rely on Defendant

1   to accurately calculate COI for his policy and to alert him to any adverse or beneficial conditions that
2   would affect his expectations for the policy.

3       34.    Under the explicit terms of the Policy, "[t]he monthly Cost of Insurance Rate is based on
4   the sex, attained age, and rating class of the person insured." Ex. 2 at 9. Furthermore, the "Monthly Cost
5   of Insurance Rates will be determined by the [Defendant] from time to time based on its expectations as
6   to future mortality experience" and "[a]ny change in the Cost of Insurance Rates will be on a uniform
7   basis for insureds of the same age, sex and classification whose policies have been in force for the same
8   length of time." *Id.*

9       35.    Sex, attained age, and rating class are factors commonly used within the life insurance
10  industry to determine the mortality expectations of an insured or group or class of insureds. Because the
11  Policy specifically identifies those factors as the defining components of the COI rates, and expressly
12  states that monthly COI rates are based on Defendant's expectations as to future mortality experience, the
13  terms of the Policies thus authorize the Defendant to use only mortality expectations to determine the COI
14  rates.

15      36.    The components—or, in the case of the Jackson National policies at issue here, the **sole**
16  component—of what a COI rate can be "based on" is a critically important feature of universal life
17  policies. The COI charge is typically the highest expense that a policyholder pays.

18  **III.**    **Defendant's Failure to Decrease COI Rates in the Face of Improving Mortality**

19      37.    Jackson National has forced policyholders to pay excess COI charges by failing to adjust
20  COI rates in the face of improving mortality; thus, the COI charges are in excess of what Jackson National
21  is contractually permitted to charge to cover its mortality risks.

22      38.    Jackson National sent Plaintiff and Class Members annual statements each year that
23  showed stable or increasing monthly COI charges, without explanation as to the calculations of these
24  charges or how the COI rates were determined. *See* Ex. 3.

25      39.    Of note, mortality rates are continuously improving as individuals are living longer.
26  Mortality tables published by the Society of Actuaries ("SOA") throughout the years demonstrate that
27  mortality expectations **have consistently improved**. This trend is even more pronounced with respect to
28  older age insureds.

40.     A mortality table is a chart showing the rate of death at a certain age.  Rate of death can be measured as a percentage or in terms of the number of deaths per thousand.  Separate tables are produced to reflect groups with different mortality.  Mortality tables will also usually have separate tables for gender, and will distinguish mortality rates for tobacco-use status, underwriting status, and duration since underwriting.  Mortality tables are used by actuaries to calculate insurance rates, and are designed to reflect mortality rate experience.

41.     Beginning at least as early as 1980, the National Association of Insurance Commissioners ("NAIC") has issued a series of Commissioners Standard Ordinary ("CSO") mortality tables.  These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in universal life policies.

42.     The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Table ("1980 CSO Table).  That table was the industry standard until 2001.  In 2001, at the request of the NAIC, the SOA and the American Academy of Actuaries ("Academy") produced a proposal for a new CSO mortality table.  The accompanying report from June 2001 explained that (a) the 1980 CSO Table was still the industry-standard table and (b) mortality rates had improved significantly each year since the 1980 table issued.  The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted . . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table."[2]

43.     The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."  This means the tables are showing a substantial improvement in mortality in a 20-year time period.  These mortality improvements represent a substantial benefit that Jackson National should have passed on to policyholder.  The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Table").  The 2001 CSO Mortality Table reflected vastly

---

[2] *See* Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, http://www.actuary.org/pdf/life/cso2_june01.pdf.

improved mortality experience as compared to the 1980 CSO Mortality Table..

44.     The SOA again updated the CSO tables in 2017.  The 2017 CSO Report showed significant reductions in insurance company reserves compared to CSO 2001 due to mortality improvements since 2001.[3]  Indeed, since the 2001 CSO Table was created, "industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development."[4]

45.     Until Recently, Jackson National acknowledged as much on the front page of its own website: "The average American is living longer than ever before."[5]

46.     Nonetheless, Jackson National has not decreased its COI rates for the Policies, despite the fact that mortality rates have improved steadily **each year**—i.e., mortality risks have only gotten **better** for Jackson National over time, as people are living much longer than anticipated when the products were priced and issued.

47.     Instead, by failing to account for its improving mortality experience and decrease the COI charges, Defendant knowingly deducts more than permitted each month, thereby raiding the Policies Accumulation Values in an attempt to force policyholders into allowing their Policies to lapse.

48.     In so doing, Defendant repeatedly and continuously breaches the Policies which require Defendant to base its COI rates on "expectations as to future mortality experience."

49.     Each of Defendant's past and future COI deductions from the Accumulation Values of Plaintiff and the Class Members constitutes a separate breach of contract.

50.     Additionally, each of Defendant's past and future Administrative Charge deductions in excess of those permitted by the Policies from the Accumulation Values of Plaintiff and the Classes constitutes a separate breach of contract.

51.     As a direct and proximate result of Defendant's breaches, Plaintiff and the Classes have been damaged.  The damages to Plaintiff and the Classes are continuing in nature in that Defendant has

---

[3] Report on the 2017 CSO and 2017 CSO Preferred Structure Table Development, Joint American Academy of Actuaries' Life Experience Committee and Society of Actuaries Preferred Mortality Oversight Group CSO Development Subgroup, October 2015, https://www.soa.org/globalassets/assets/files/research/exp-study/research-2017-cso-report.pdf.
[4] *Id.*
[5] JACKSON, https://www.jackson.com/index.xhtml (screenshot attached hereto as Exhibit 4).

1  deducted and will continue to deduct unauthorized amounts from policyholders' Accumulation Values.

2       52.    The nature of Defendant's conduct is such that Plaintiff and each member of the Classes
3  were unaware that Defendant was engaging in wrongdoing by taking inflated charges and improper
4  amounts from Accumulation Values.  Defendant possesses the actuarial information and equations
5  underlying the computation of rates and charges for the Policies.  The COI rates used to calculate COI
6  charges are not disclosed to policy owners, nor are the components or factors that comprise those rates.
7  Even if this information had been provided to Plaintiff and the Class Members, they would lack the
8  knowledge, experience, or training to reasonably ascertain how Defendant calculated the rates and charges
9  included in the Policies.

10      53.    Defendant was aware that Plaintiff and each member of the Classes did not know about the
11 improper deductions because of its superior knowledge of the aforementioned computations.  The annual
12 statements sent to Plaintiff each year identified the monthly COI charges, but affirmatively concealed the
13 factors Defendant used to calculate the COI rates.  Concealment of its conduct and failure to disclose its
14 conduct to Plaintiff and the Classes constitutes fraudulent concealment and therefore tolls the statute of
15 limitations for Plaintiff and the proposed Class Members.  Plaintiff did not learn of Defendant's breaches
16 until, at the earliest, October 2019, when he engaged counsel.

17      54.    Plaintiff did not, nor could have, through reasonable diligence, discovered the facts
18 establishing Defendant's breaches or the harm caused thereby.

19 **IV.    Defendant's Motive for Failing to Decrease the COI**

20      55.    Life insurance policies are unique financial obligations: long-term commitments where the
21 life insurer promises to be a faithful steward of policyholders' money and to give a sum-certain to
22 policyholders' loved ones after their death.

23      56.    To induce people to enter into these decades-long agreements, life insurers, including
24 Defendant, tout their longevity, long-standing commitment to policyholders and their families, and their
25 financial strength.  For example, Defendant touts that it "first opened for business in 1961 as a small
26 family-owned company."  The website continues: "As we have evolved over the years into a successful
27 multi-billion dollar organization, we have lived by the mantra that no matter where our journey takes us,
28 we will never forget where we came from.  We are just as proud of our heritage as we are of what we have

1  become."[6]

2  57.    The NAIC also specifically acknowledges that a company's financial condition is an

3  essential tool used to protect policyholders. NAIC Statement of Statutory Accounting Principles (the

4  "SSAP"), Preamble, ¶ 27 ("The ability to effectively determine financial condition using financial

5  statements is of paramount importance to the protection of policy holders.").

6  58.    So, too, is a life insurer's accounting information acknowledged as a factor consumers use

7  to determine which entity they will trust with their money.  *Id.* at Preamble at ¶ 6 ("Customers . . . may

8  use accounting information to make choices as to the entity with which they engage in a business

9  transaction.").

10  59.    Though Defendant reports increasing pre-tax operating income and consistently pays

11  millions of dollars in dividends to its parent company, reconciliation of its financials to International

12  Financial Reporting Standards ("IFRS") net income as well as net income based on US generally accepted

13  accounting principles ("GAAP"), indicates that Jackson actually has millions in IFRS net loss and GAAP

14  basis net loss.[7]

15  60.    Additionally, the pricing assumptions created when the Policies were initially marketed

16  and sold decades ago were likely inflated and optimistic in regards to the high credited interest rates

17  guaranteed by the Policies.

18  61.    Simply put, "Low interest rates are a big part of this new pressure on insurers; their earnings

19  are being squeezed."[8]  For example, "If, say, an 8 percent bond from the 1990s matures, the cash must be

20  reinvested in something new. But now, a similar bond may pay only 2 percent. The insurance policy sold

21  to a customer back in the 1990s guaranteed a 4 percent return. It adds up to a vexing math problem: how

22  to back a promise of 4 percent in a 2-percent-or-less world."[9]

23

24  [6]  *Our History*, JACKSON,  https://www.jackson.com/our-company/the-jackson-story/history.xhtml
    (screenshot attached hereto as Exhibit 5).

25  [7]  *Jackson Reports first Half 2019 Financial Results*, JACKSON, https://www.jackson.com/jwp/our-

26  company/the-jackson-story/news-articles/jackson-reports-first-half-2019-financial-results.xhtml    (last
    visited Jan. 31, 2020).

27  [8]  Mary Williams Walsh, *Why Some Life Insurance Premiums Are Skyrocketing*, The New York Times
    (Aug.  13,  2016),  https://www.nytimes.com/2016/08/14/business/why-some-life-insurance-premiums-

28  are-skyrocketing.html?_r=1.
    [9]  *Id.*

62.     Finally, all insurance companies that increase or fail to appropriately decrease COI rates have at least one thing in common: the use of captive and affiliate reinsurance companies to hide liabilities.[10]  Defendant is no exception and employs the use of captive reinsurers.

63.     Moody's also predicted the problems of using captive reinsurance transactions in 2004, predicting that over the "next five to 10 years" problems would develop and could "pose significant negative credit consequences, particularly for business subject to XXX/AXXX reserves"[11] like Defendant.[12]  Since 2004, Moody's, along with other notable commentators, has continued to monitor and criticize the life insurance industry regarding the use of captive reinsurance.[13]

64.     By increasing the administrative expense charges on Plaintiff's and Class Members' Policies and failing to decrease the COI consistent with improving mortality experience, Defendant's benefits are twofold: (1) collect the additional, excess charges paid by policyholders each month; and (2) force policyholders to forfeit their Policies because of the inflated charges, thereby releasing its obligation to pay the death benefits and promised credited interest rates.

//

//

//

---

[10] Walsh, *supra* n. 3. ("But in recent years, even as low interest rates ate into the industry's profits, some companies engaged in complex financial maneuvers that enabled them to pay hefty shareholder dividends. Normally, life insurers cannot pay shareholder dividends unless their balance sheets are flush. These maneuvers involve shifting a company's future obligations to policyholders into special financial vehicles that do not appear on the insurer's balance sheets."); Sussman, *supra* n. 2. ("[T]hese rate increases are being instituted to boost the return on investment on these older blocks of business. Of the carriers that have already instituted COI increases, two in particular (that we know of) have participated in complex captive reinsurance transactions that freed up significant capital that was then up-streamed as dividends to their European corporate parents.").

[11] "AXXX" reserves are for universal life insurance policies while "XXX" reserves are for term life policies.

[12] Special Comment, *Hidden Credit Risks of Regulation XXX/Guideline AXXX Reinsurance Programs*, Moody's Investors Service, Report No. 80935 at 1 (2004).

[13] Special Comment, *The Captive Triangle: Where Life Insurers' Reserve and Capital Requirements Disappear*, Moody's Investor Services, Report No. 156495 (Aug. 23, 2013) (analyzing AXA's captive reinsurance in Appendix III); Sector Comment, *Affiliated Certified Reinsurers: A Growing Risk for Life Industry*, Moody's Investors Service, Report No. 1028905 (Jun. 30, 2016); Sector In-Depth, *Lifting the Veil on XXX/AXXX Captives: Better Disclosure Reveals Sizable Exposures*, Moody's Investors Service, Report No. 1052633 at 15 (Jan. 20, 2017) (recognizing in Appendix 4 AXA as number 13 in the Top 20 XXX/AXXX Captive Exposures of Moody's Rated Universe).

1

## CLASS ALLEGATIONS

2    65.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on

3    her own behalf and as a representative of the following subclasses ("Class Members" or "Classes"):

4

5    **a. National Subclass:** All persons who own or owned a universal life insurance policy

6    issued or administered by Defendant, the terms of which provide or provided for:

7    (1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to future morality experience; and (2) additional but separate policy charges, deductions, or expenses.

8

9    **b. California Subclass:** All California residents who own or owned a universal life

10    insurance policy issued or administered by Defendant, the terms of which provide

11    or provided for: (1) an insurance or cost of insurance charge or deduction calculated

12    using a rate that is determined based on Defendant's expectations as to future morality experience; and (2) additional but separate policy charges, deductions, or expenses.

13

14    66.    Excluded from the National and California Classes are the Defendant and any of its

15    members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the

16    judicial officers, and their immediate family members; and Court staff assigned to this case.

17    67.    The members of the Classes are so numerous that joinder of all Class Members in this

18    action is impracticable.  Plaintiff believes that there are over thousands of members of the Classes.

19    68.    There are questions of fact and law common to the Classes, including but not limited to the

20    following:

21    a.    whether Defendant Jackson National is permitted by the Polices to use the factors

22    other than those disclosed in the Policies to determine the monthly COI Rates used to calculate

23    COI charges or deductions;

24    b.    whether Defendant added, included, or relied on factors not specified in the Policies

25    when determining the monthly COI Rates used to calculate COI charges or deductions;

26    c.    whether Defendant added, included, or relied on factors unrelated to mortality

27    expectations in setting and determining COI Rates, despite the policy provisions providing that

28    COI Rates will be based on expectations as to future mortality experience;

1        d.      whether Defendant breached its contractual obligations to Plaintiff and Class

2 Members by failing to decrease the COI rates consistent with improving mortality experience;

3        e.      the true economic justification for the failure to decrease the cost of insurance

4 consistent with the requirements of Plaintiff's and Class Members' Policies;

5        f.      whether Defendant charged or deducted Administrative Charges in excess of those

6 permitted by the Policies;

7        g.      whether Defendant breached its contractual obligations to Plaintiff and Class

8 Members by charging excess Administrative Charges;

9        h.      whether Defendant was unjustly enriched by its actions towards Plaintiff and Class

10 Members;

11        i.      whether Defendant converted the premiums and policy values of Plaintiff and Class

12 Members;

13        j.      the extent of injuries sustained by members of the Classes; and

14        k.      the appropriate type and/or measure of damages.

15        69.      Plaintiff's claims are typical of the claims of all Class Members because Plaintiff and all

16 Class Members have been damaged by the same unlawful/improper uniform misconduct by Defendant

17 alleged herein.

18        70.      Plaintiff will fairly and adequately protect the interests of the Class Members. In addition,

19 Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex

20 litigation, including class action litigation. Finally, the interests of Plaintiff are coincident with, and not

21 antagonistic to, those of the Classes.

22        71.      Class action treatment is superior to the alternatives, if any, for the fair and efficient

23 adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly

24 situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

25 without the unnecessary duplication of effort and expense that could result from individualized litigation.

26 Further, individualized litigation would create the danger of inconsistent or contradictory judgments

27 arising from the same set of facts.  Class action treatment will also permit the adjudication of relatively

28

1   small claims by the Class Members, as measured against the effort and expense required to individually

2   litigate these complex claims against Defendant.

3       72.     Plaintiff knows of no difficulties that are likely to be encountered in the management of

4   this action that would preclude its maintenance as a class action.

5       73.     The Classes satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in

6   that (1) the Classes are so numerous that joinder of all members is impracticable; (2) there are questions

7   of law and fact common to the Classes; (3) the claims or defenses of the representative parties are typical

8   of the claims or defenses of the Classes; (4) the Plaintiff will fairly and adequately protect the interests of

9   the Classes; (5) individualized litigation would create the danger of inconsistent or contradictory

10  judgments arising from the same set of facts and increase the delay and expense to all parties and the court

11  system from the issues raised by this action; and (6) the questions of law or fact common to the Class

12  Members predominate over any questions affecting any individual members.

**COUNT ONE**
**BREACH OF CONTRACT**
*Failure to Decrease COI Charges*
**(All Classes)**

13

14

15

16      74.     Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully

17  set forth herein.

18      75.     Plaintiff and Class Members purchased life insurance policies—the Policies—from

19  Defendant.

20      76.     The Policies are valid and enforceable contracts between Defendant and Plaintiff and the

21  Class Members.

22      77.     Plaintiff and the Class Members paid to Defendant all premiums and charges due under

23  their Policy as set forth at the time of execution of the Policy, and have performed all obligations and

24  conditions under the terms of the Policies.

25      78.     Under the Policy, Defendant owed and continues to owe duties and obligations to the

26  Plaintiff and Class Members.  Among these duties is the duty to properly administer their Policies

27  consistent with the terms and obligations set forth within the life insurance policy.  This includes the duty

28  to determine the correct monthly deduction from a policyholder's account based on future mortality

1  experience and the duty to deduct only those charges authorized by the Policies from a policyholder's
2  Accumulation Value.

3      79.    Defendant materially breached the terms of the life insurance policy and its duties to
4  Plaintiff and Class Members under the Policies by deducting COI charges calculated from COI rates not
5  based on expectations of future mortality experience.  These overcharges include, but are not limited to,
6  the excess COI charges that Defendant deducted by not reducing COI rates based on improving mortality.

7      80.    Defendant's failure to decrease COI rates also violated the contract's requirement that
8  Defendant review and redetermine COI rates because any such review would have shown the need to
9  decrease COI rates based on the improved mortality.

10     81.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have
11 sustained damages that are continuing in nature in an amount to be determined at trial.   The
12 aforementioned damages include, but are not limited to, the diminished value in Plaintiff's and Class
13 Members' life insurance policies and the improperly inflated cost of insurance charges.

14                            **COUNT TWO**
15                        **BREACH OF CONTRACT**
                         *Increased Administrative Charges*
16                            **(All Classes)**

17     82.    Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully
18 set forth herein.

19     83.    Plaintiff and Class Members purchased life insurance policies—the Policies—from
20 Defendant.

21     84.    The Policies are valid and enforceable contracts between Defendant and Plaintiff and the
22 Class Members.

23     85.    Plaintiff and the Class Members paid to Defendant all premiums and charges due under
24 their Policy as set forth at the time of execution of the Policy, and have performed all obligations and
25 conditions under the terms of the Policies.

26     86.    Under the Policy, Defendant owed and continues to owe duties and obligations to the
27 Plaintiff and Class Members.  Among these duties is the duty to properly administer their Policies
28 consistent with the terms and obligations set forth within the life insurance policy.  This includes the duty

1   to determine the correct monthly deduction from a policyholder's account and the duty to deduct only
2   those charges authorized by the Policies from a policyholder's Accumulation Value.

3       87.    Defendant materially breached the terms of the life insurance policy and its duties to
4   Plaintiff and members of the Classes under the Policies by impermissibly deducting Administrative
5   Charges from the Accumulation Values of Plaintiff and the Class Members in amounts in excess of the
6   fixed and maximum administrative charges expressly authorized by their Policies.

7       88.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have
8   sustained damages that are continuing in nature in an amount to be determined at trial.   The
9   aforementioned damages include, but are not limited to, the diminished value in Plaintiff's and Class
10  Members' life insurance policies and the improper increased administrative charges.

**COUNT THREE**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(California Subclass)**

14      89.    Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully
15  set forth herein.

16      90.    Plaintiff and Class Members entered into a contract with Defendant when their respective
17  Policies were purchased.

18      91.    Implied in the Policies are contractual covenants of good faith and fair dealing through
19  with Defendant owed Plaintiff and Class Members a duty to act in a manner that did not frustrate their
20  reasonable expectations under the Policies.   This would include properly administering the Policies
21  consistent with the terms and obligations set forth within the life insurance policy, determining the correct
22  monthly deduction from a policyholder's account, calculating the COI rates based on future mortality
23  expectations,   and deducting only those charges authorized by the Policies from a policyholder's
24  Accumulation Value.

25      92.    Plaintiff and Class Members did all, or substantially all, of the significant things that the
26  contract required them to do; namely, throughout the life of the life insurance policy, Plaintiff and Class
27  Members have paid to Defendant all premiums and charges due under their Policies as set forth at the time
28  of execution of their Policies, and Plaintiff and Class Members have performed all obligations and

conditions under their respective Policies.

93.    Defendant failed to act in good faith in the performance of its duties owed to Plaintiff and Class Members under the Policies by:

a.  including unauthorized and undisclosed factors in the monthly COI Rates, and thus impermissibly causing those rates to be higher for the Policies of Plaintiff and Class Members;

b.  calculating COI charges using monthly COI Rates that are higher than those authorized by the Policies, thus deducting and continuing to deduct greater-than-authorized COI charges from the Accumulation Values of Plaintiff and the Class Members;

c.  failing to lower monthly COI Rates for the Policies as a result of improving mortality experience;

d.  failing to determine the correct monthly deduction from the life insurance policy's account in accordance with the policy's terms and conditions;

e.  impermissibly deducting Administrative Charges from the Accumulation Values of Plaintiff and the Class Members in amounts in excess of the fixed and maximum administrative charges expressly authorized by their Policies; and

f.  failing to administer and/or maintain said Policies consistent with Defendant's duty of good faith and fair dealing implied in the performance of every contract.

94.    Defendant's actions unfairly interfered with the Plaintiff's and Class Members' receipt of their respective Policy's benefits.

95.    Defendant's conduct did not comport with Plaintiff's and Class Members' reasonable contractual expectations under their Policies with respect to the COI and administrative charges.

96.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have sustained damages that are continuing in nature in an amount to be determined at trial.  The aforementioned damages include, but are not limited to, the diminished value in Plaintiff's and Class Members' life insurance policies; the improperly inflated cost of insurance charges; and the improper increased administrative charges.  Plaintiff and Class Members are entitled to damages for all premiums paid or, in the alternative, the unlawful and artificially inflated COI and administrative charges that

1    Defendant has paid itself from the Policies' Accumulation Value, punitive damages, and all other relief

2    this Court orders in the interest of justice whether in law or equity.

### COUNT FOUR
### TORTIOUS BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (California Subclass)

6    97.    Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully

7    set forth herein.

8    98.    Plaintiff and Class Members entered into a contract with Defendant when their respective

9    Policies were purchased.

10   99.    Plaintiff and Class Members did all, or substantially all, of the significant things that the

11   contract required them to do; namely, throughout the life of the life insurance policy, Plaintiff and Class

12   Members have paid to Defendant all premiums and charges due under their Policies as set forth at the time

13   of execution of their Policies, and Plaintiff and Class Members have performed all obligations and

14   conditions under their respective Policies.

15   100.   Life insurance policies, like those owned by Plaintiff and Class Members, protect the

16   insureds and their families from the economic harm and risk presented by death.  As is the case with most

17   insurance contracts, the financial interests of Defendant and the Policyholders are directly at odds:

18   Defendant benefits from inflating the charges to Policyholders and the Policyholders are harmed by such

19   inflated charges.  As explained above, Defendant in particular benefits if Plaintiff and the Class Members

20   are forced to forfeit the Policies because of its inflated COI and administrative charges because it will

21   have obtained premium payments without having to pay the death benefits or the promised credited

22   interest rates.

23   101.   For these reasons, Defendant owes Plaintiff and the Class Members a heightened duty of

24   good faith and fair dealing.  Among other things, Defendant is required to refrain from doing anything to

25   injure their right to receive the benefits of the Policies.  Defendant is required to give at least as much

26   consideration to the welfare of the policyholders as it gives to its own interests.  Furthermore, Defendant

27   has a duty to reasonably inform Plaintiff and the Class Members of their rights and obligations under the

28   Policies.

102.     Defendant has breached these duties and frustrated the reasonable expectations of Plaintiff and the Class Members and tortuously deprived Plaintiff and the Class Members of benefits under their Policies by:

    a.   including unauthorized and undisclosed factors in the monthly COI Rates, and thus impermissibly causing those rates to be higher for the Policies of Plaintiff and Class Members;

    b.   calculating COI charges using monthly COI Rates that are higher than those authorized by the Policies, thus deducting and continuing to deduct greater-than-authorized COI charges from the Accumulation Values of Plaintiff and the Class Members;

    c.   failing to lower monthly COI Rates for the Policies as a result of improving mortality experience;

    d.   failing to determine the correct monthly deduction from the life insurance policy's account in accordance with the policy's terms and conditions;

    e.   impermissibly deducting Administrative Charges from the Accumulation Values of Plaintiff and the Class Members in amounts in excess of the fixed and maximum administrative charges expressly authorized by their Policies; and

    f.   failing to administer and/or maintain said Policies consistent with Defendant's duty of good faith and fair dealing implied in the performance of every contract.

103.     In so acting, Defendant did not give proper consideration to the welfare of Plaintiff and the Class Members and served solely its own interests at their expense.  In addition, Defendant has failed to truthfully, let alone reasonably, disclose or describe its course of conduct, or the basis and reasons for its course of conduct.

104.     Such conduct was intentional and deliberate and constitutes oppression, fraud, or malice.

105.     Defendant's forgoing alleged acts and omissions were and are unreasonable and without proper cause.  If left unabated, Defendant's conduct will frustrate and deprive Plaintiff and Class Members of the reasonably expected benefits of the Policies.

106.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have sustained damages that are continuing in nature in an amount to be determined at trial.  The aforementioned damages include, but are not limited to, the diminished value in Plaintiff's and Class

Members' life insurance policies; the improperly inflated cost of insurance charges; and the improper increased administrative charges.  Plaintiff and Class Members are entitled to damages for all premiums paid or, in the alternative, the unlawful and artificially inflated COI and administrative charges that Defendant has paid itself from the Policies' Accumulation Value, disgorgement of Defendant's profits received in connection with the above-referenced wrongful acts and omissions, punitive damages, and all other relief this Court orders in the interest of justice whether in law or equity.

## COUNT FIVE
## UNJUST ENRICHMENT
### (All Classes)

107.    Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully set forth herein.

108.    Plaintiff and Class Members conferred benefits upon Defendant; specifically, paid money in the form of premiums to fund their life insurance policy.

109.    Defendant knew that it was enjoying such benefits from the Plaintiff's and Class Members' premium and excess premium payments.

110.    Defendant misused the benefits Plaintiff and Class Members conferred on them by engaging in the above described schemes.

111.    Defendant has unlawfully raided Plaintiff's and Class Members' Accumulation Values under the guise of justifiable COI Rates.

112.    Defendant's actions have caused policyholders, and will continue to cause policyholders, to abandon their universal life insurance policies without receiving the benefit of said Policies.

113.    It is unjust for Defendant to retain the benefits they have enjoyed from Plaintiff's and Class Members' premium payments and excess premium payments.

114.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have sustained damages that are continuing in nature in an amount to be determined at trial.    The aforementioned damages include, but are not limited to, the diminished value in Plaintiff's and Class Members' life insurance policies; the improperly inflated cost of insurance charges; and the improper increased administrative charges.  Plaintiff and Class Members are entitled to damages for all premiums

paid or, in the alternative, the unlawful and artificially inflated COI and administrative charges that Defendant has paid itself from the Policies' Accumulation Value. Plaintiff and Class Members are entitled to damages and all other relief this Court orders in the interest of justice whether in law or equity.

**COUNT SIX**
**CONVERSION**
**(All Classes)**

115. Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully set forth herein.

116. Plaintiff and the Classes had a property interest in the funds Defendant deducted from their Accumulation Values in excess of the amounts permitted by the terms of the Policies.

117. Plaintiff's and Class Members' policy Accumulation Values were specific and identifiable and were the Plaintiff's and Class Members' personal property. Additionally, the unauthorized charges Defendant took from Plaintiff and the Classes are capable of determination, to an identified sum.

118. By deducting COI charges and expense charges in unauthorized amounts from the Accumulation Values of Plaintiff and Class Members, Defendant assumed and exercised ownership over, and misappropriated or misapplied, specific funds held in trust for the benefit of Plaintiff and the Classes, without authorization or consent and in hostility to the rights of Plaintiff and Class Members.

119. Defendant continues to retain these funds unlawfully without Plaintiff's and Class Members' consent.

120. Defendant's wrongful exercise of control over the personal property of Plaintiff and Class Members constitutes conversion.

121. Defendant intended to cause damage to Plaintiff and the Classes by deducting more from their Accumulation Values than was authorized by the Policies. Defendant's systematic acts of conversion are therefore malicious and oppressive to Plaintiff and the Classes.

122. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Classes have sustained damages that are continuing in nature in an amount to be determined at trial. Plaintiff and Class Members are entitled to recover from Defendant all damages and cots permitted by law, including all amounts Defendant has wrongfully converted, punitive damages, and all other relief this

1  Court orders in the interest of justice.

2  **<u>COUNT SEVEN</u>**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
3  *Cal. Bus. & Prof. Code § 17200, et seq.*
**(California Subclass)**
4

5       123.    Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully
6  set forth herein.

7       124.    Defendant committed acts of unfair competition by engaging in the following practices,
8  among others:

9       a.  marketing and selling the Policies on the premise that they were a solid and good life insurance
10          product that would provide a certain death benefit for a certain cost and duration and
11          subsequently taking steps to prevent policyholders from receiving the promised benefits from
12          those Policies by continuously inflating the COI and expense charges of the Policies;

13      b.  including unauthorized and undisclosed factors in the monthly COI Rates, and thus
14          impermissibly causing those rates to be higher for the Policies of Plaintiff and Class Members;

15      c.  calculating COI charges using monthly COI Rates that are higher than those authorized by the
16          Policies, thus deducting and continuing to deduct greater-than-authorized COI charges from
17          the Accumulation Values of Plaintiff and the Class Members;

18      d.  failing to lower monthly COI Rates for the Policies as a result of improving mortality
19          experience;

20      e.  failing to determine the correct monthly deduction from the life insurance policy's account in
21          accordance with the policy's terms and conditions;

22      f.  impermissibly deducting Administrative Charges from the Accumulation Values of Plaintiff
23          and the Class Members in amounts in excess of the fixed and maximum administrative charges
24          expressly authorized by their Policies; and

25      g.  imposing inflated COI and Administrative charges, even though Defendant's expected future
26          mortality has improved, in order to increase premiums, recoup losses, and/or force its insureds
27          to terminate their Policies; and

28      h.  failing to disclose to Plaintiff and Class Members the true basis for the increasing COI rates.

125.     Defendant violated California's Unfair Competition Law through its alleged misconduct, including the tortious breach of the implied obligation of good faith and fair dealing as alleged above.

126.     Defendant further violated California's Unfair Competition Law by raising the COI and Administrative Charges for reasons not authorized under the Policies, unfairly shifting to Plaintiff and Class Members (a) Defendant's GAAP and IFRS losses and (b) Defendant's cost of meeting its obligations to pay credited interest at the 4% annual guaranteed rates.

127.     These unfair and unlawful practices are continuing in nature and are widespread practices in which Defendant engages.

128.     On behalf of the general public and the California Subclass, Plaintiff therefore seeks an injunction against Defendant preliminarily, and permanently enjoining it (1) from continuing to engage in unlawful and unfair conduct and preventing Defendant from collecting the unlawfully and unfairly inflated COI and Administrative charges in violation of the Policies; and (2) ordering any Policy to be reinstated that lapsed or terminated as a result of the increasing COI and Administrative charges.

129.     On behalf of the general public and the California Subclass, Plaintiff also respectfully requests this Court order restitution to be paid by Defendant to the California Subclass for COI and Administrative charges, premiums, and other amounts wrongfully required, obtained, and collected as a result of the charges in violation of the Policies.

130.     As the prevailing party in his request for injunctive relief and restitutionary relief against Defendant on behalf of himself and the Class Members.

## COUNT EIGHT
## DECLARATORY AND INJUNCTIVE RELIEF

131.     Plaintiff incorporates the allegations of Paragraphs 1 through and including 73 as if fully set forth herein.

132.     An actual controversy has arisen and now exists between Plaintiff and Class Members and Defendant, concerning the respective rights and duties of the parties under the Policies.

133.     Plaintiff contends that Defendant has breached the Policies by using unauthorized and undisclosed factors to compute the monthly COI Rates under the Policies, failing to decrease the COI Rates for the Policies in accordance with improved mortality and, as a result, withdrawing COI charges

from the Accumulation Values of Plaintiff and the Classes in an amount greater than those authorized by the Policies, as well as deducting expense charges in excess of the specific amounts permitted by the Policies.

134.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court to declare the aforementioned conduct of Defendant as an unlawful and in material breach of the Policies so that future controversies may be avoided.

135.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiff further seeks an injunction temporarily, preliminarily, and permanently enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies, and from continuing to collect unlawfully inflated charges in violation of the Policies; and (2) ordering Defendant to comply with terms of the Policies in regard to its assessment of charges against Plaintiff and Class Members' Accumulation Values.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

a.  Certification of the Classes as requested herein, appointing Plaintiff as a representative of the Classes, appointing Plaintiff's counsel as Class Counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Classes;

b.  Issuing a judgment against Defendant for the causes of action alleged against it;

c.  Awarding Plaintiff and Class Members compensatory damages in an amount to be determined at trial;

d.  Awarding Plaintiff and Class Members restitution and/or disgorgement and other such equitable relief as the Court deems proper;

e.  Awarding Plaintiff and Class Members punitive and exemplary damages;

f.  Issuing a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policies;

g.  Enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

h.   Ordering preliminary and permanent injunctive relief required Defendant to reinstate any Class Member whose Policy was cancelled or surrendered as a result of the increasing COI and Administrative charges;

i.   Awarding Plaintiff and Class Members pre-judgment and post-judgment interest at the maximum rate permitted by law;

j.   Awarding Plaintiff and Class Members' attorneys' fees and costs incurred; and

k.   Affording Plaintiff and Class Members with such further and other relief as deemed just and proper by the Court in law or equity.

## JURY DEMAND

Plaintiff demands a jury trial of all issues triable by right by jury.

RESPECTFULLY SUBMITTED, this the 11th day of March, 2020.

/s/ Rachel N. Boyd
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice anticipated*)
RACHEL N. BOYD (*pro hac vice anticipated*)
PAUL W. EVANS (*pro hac vice anticipated*)
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone: 334-269-2343
Facsimile: 334-954-7555
dee.miles@beasleyallen.com
andrew.brashier@beasleyallen.com
rachel.boyd@beasleyallen.com


Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com

*Attorneys for Plaintiff*

## **ECF ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that concurrence regarding the filing of this document has been obtained from the signatory above.

Dated:  March 11, 2020

Respectfully submitted,

ANDRUS ANDERSON LLP


*/s/ Jennie Lee Anderson*
Jennie Lee Anderson

Jennie Lee Anderson (SBN 203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:    (415) 986-1400
Facsimile:     (415) 986-1474
jennie@andrusanderson.com

*Attorneys for Plaintiff*